Dervishi v. Stamford Bd. of Educ.

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of June, two thousand sixteen.

PRESENT: DENNIS JACOBS,
         GUIDO CALABRESI,
         REENA RAGGI,
                        **Circuit Judges.**

- - - - - - - - - - - - - - - - - - - - - - -X
SHKELQESA DERVISHI, on behalf of T.D.,
         **Plaintiff-Appellant,**

         **-v.-**                           15-2798

STAMFORD BOARD OF EDUCATION,
         **Defendant-Appellee.**
- - - - - - - - - - - - - - - - - - - - - - -X

**FOR APPELLANT:**          Shkelqesa Dervishi, pro se,
                            Stamford, CT.

**FOR APPELLEE:**           Patrick M. Fayhe, Shipman &
                            Goodwin, Hartford, CT.

1

Appeal from a judgment of the United States District Court for the District of Connecticut (Eginton, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED** in part, **VACATED** in part, and **REMANDED** for further proceedings.

Shkelqesa Dervishi, pro se, appeals from the judgment of the United States District Court for the District of Connecticut (Eginton, J.) affirming an administrative impartial hearing officer's ("IHO") decision denying her Individuals with Disabilities Education Act ("IDEA") claims brought on behalf of her minor autistic son, T.D., against the Stamford Board of Education ("Board"). We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

We review de novo the district court's grant of summary judgment in an IDEA case, recognizing that summary judgment in this context "involves more than looking into disputed issues of fact; rather, it is a pragmatic procedural mechanism for reviewing administrative decisions." M.O. v. N.Y.C. Dep't of Educ., 793 F.3d 236, 243 (2d Cir. 2015) (internal quotation marks and citation omitted). Thus, our de novo review seeks only to independently verify that the administrative record supports the district court's determination that the individualized education program ("IEP") was adequate. M.W. ex rel. S.W. v. N.Y.C. Dept. of Educ., 725 F.3d 131, 138 (2d Cir. 2013).

**1.** The IDEA's purpose is "to ensure that all children with disabilities have available to them a free appropriate public education" ("FAPE"). 20 U.S.C. § 1400(d)(1)(A). To this end, the IDEA requires that states provide disabled children a "basic floor of opportunity" that is likely to benefit the child. T.K. v. N.Y.C. Dept. of Educ., 810 F.3d 869, 875 (2d Cir. 2016). The IDEA's "principal mechanism" for achieving this is the individualized education program ("IEP"), which is a "written document that must include the child's level of performance, goals for [his] improvement, and a plan about how to achieve that improvement." Id.

2

If a state fails to provide a FAPE to a disabled child, the parents may elect an alternative placement and seek reimbursement from the state. Doe v. East Lyme Bd. of Educ., 790 F.3d 440, 448 (2d Cir. 2015). Tuition reimbursement entails a three-step inquiry: (i) whether the school district has complied with the IDEA's procedural requirements; (ii) whether the school district has complied with the IDEA's substantive requirements, i.e., whether the IEP is reasonably calculated to enable the child to receive educational benefits; and (iii) whether the parent's alternative placement is "appropriate to the child's needs." Id. at 449 (internal quotation marks omitted). Parents must prevail at all three steps to receive reimbursement. Id.

Procedural errors render an IEP inadequate only if they "impeded the child's right to a [FAPE]"; "significantly impeded the parents' opportunity to participate in the decisionmaking process"; or "caused a deprivation of educational benefits." 20 U.S.C. § 1415(f)(3)(E)(ii). Substantive challenges must demonstrate that an IEP is not "reasonably calculated to enable the child to receive educational benefits." Doe, 790 F.3d at 450 (internal quotation marks and citation omitted). We owe substantial deference to state administrative officers when considering claims of substantive inadequacy. Id.

Dervishi's procedural and substantive challenges to the 2010-2011 IEP fail. The IDEA does not require the parents' presence at planning and placement team ("PPT") meetings; rather, it requires only that the school board give parents the opportunity to participate in the decision about their child's educational placement. Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 193 (2d Cir. 2005). The record shows that the Board gave Dervishi and her husband ample opportunity to so participate: the parents participated in the first two PPT meetings, the Board attempted repeatedly to schedule the next PPT meeting around the parents' summer travel plans, and the parents attended the fifth (and final) PPT meeting where they presented an independent evaluation and suggested alternative placement options. The Board rejected the parents' proposed alternative placement options, and was within its rights to do so: "the parent's right of participation is not a right to 'veto' the agency's proposed IEP." Doe, 790 F.3d at 449.

3

The 2010-2011 IEP offered T.D. placement at the Roxbury Elementary School, which had a special education program and could provide T.D. with the enhanced staffing, occupational therapy, and speech therapy, all as outlined in his IEP. There is no basis in the record to reject the IHO's determination that this combination of placement and services was substantively appropriate. Because we conclude that the Board provided T.D. with a FAPE for the 2010-2011 school year, we need not consider whether the parents' alternate placements were appropriate. See id.

**2.** The stay-put provision of the IDEA provides that "during the pendency of any proceedings conducted pursuant to this section . . . the child shall remain in [his] then-current educational placement." 20 U.S.C. § 1415(j). The "then-current educational placement" is typically: (i) "the placement described in the child's most recently implemented IEP"; (ii) "the operative placement actually functioning at the time when the stay put provision of the IDEA was invoked"; or (iii) "the placement at the time of the previously implemented IEP." Mackey ex rel. Thomas M. v. Bd. of Educ. for Arlington Cent. Sch. Dist., 386 F.3d 158, 163 (2d Cir. 2004) (internal quotation marks and alterations omitted). The purpose of this provision is "to maintain the educational status quo while the parties' dispute is being resolved" and requires that the school district "continue funding whatever educational placement was last agreed upon for the child until the relevant administrative and judicial proceedings are complete." T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist., 752 F.3d 145, 152, 171 (2d Cir. 2014). A school district is responsible for funding educational placement during the pendency of a dispute under the IDEA regardless of whether the case is meritorious or whether the child would otherwise have a substantive right to that placement. Doe, 790 F.3d at 453.

On November 18, 2010, when Dervishi sought administrative review, the placement "actually functioning at the time" was the home program that the school district had agreed to fund for the previous school year. The Board only agreed to fund T.D.'s home program on a temporary basis; but, because "the Board's obligation to fund stay-put placement is rooted in statute, not contract," the parties' intent as to the duration

4

of T.D.'s home program does not alter the Board's reimbursement obligation under the stay-put provision. Id. The district court erred in concluding that the IEP created in August 2010 constituted the current placement for purposes of the stay-put obligation because it was never implemented or agreed to by the parents. In light of the foregoing, we vacate the district court's denial of Dervishi's stay-put claim. On remand, the district court should (i) calculate the total value of the home program, as specified in the settlement agreement, for the period from November 18, 2010 until the dispute over the 2010-2011 IEP is no longer pending, and (ii) order the Board to pay that amount to Dervishi. Id. at 457; Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz, 290 F.3d 476, 484 (2002).

**3.** Dervishi challenges the dismissal of her claim that the Board breached the parties' 2009 settlement agreement, in which they agreed on a course of action for T.D. for the 2009-2010 school year. While the IHO did not issue a ruling on this claim, factual findings were made that doom Dervishi's claim. The IHO found that the Board followed the procedure the parties created for selecting consultants, timely held PPT meetings, acted reasonably in trying to accommodate the parents, and timely evaluated and assessed T.D. There is no basis in the record to conclude the Board breached the 2009 settlement agreement.

**4.** To determine whether an IHO is biased, courts consider whether the record shows that the hearing was fair and impartial. See, e.g., E.S. ex rel. B.S. v. Katonah-Lewisboro Sch. Dist., 742 F. Supp. 2d 417, 434-35 (S.D.N.Y. 2010). The record is plain: the IHO conducted a fair and impartial hearing.

Accordingly, and finding no merit in Dervishi's other arguments, we hereby **AFFIRM** in part and **VACATE** in part the judgment of the district court, and **REMAND** for further proceedings.

                              FOR THE COURT:
                              CATHERINE O'HAGAN WOLFE, CLERK